**HOLIDAY INNS OF AMERICA, INC.,**
a corporation, Appellant,

v.

**Leonard PECK, Appellee.**

**No. 1858.**

Supreme Court of Alaska.

March 26, 1974.

D. A. Burr and Arden E. Page, Burr, Pease & Kurtz, Anchorage, for appellant.

James K. Tallman, Anchorage, for appellee.

Before RABINOWITZ, Chief Justice, and CONNOR, ERWIN, BOOCHEVER and FITZGERALD, Justices.

## OPINION

BOOCHEVER, Justice.

Appellant Holiday Inns suffered a judgment of $51,000 against it in the superior court for damages arising out of an alleged breach of a franchise contract Holiday Inns had made with Leonard Peck for the construction of a Holiday Inn facility in Anchorage. The original franchise contract was entered into in November of 1965, with Peck tendering a deposit of $10,000 and the parties executing a contract in the form of a "commitment letter".

The commitment letter contained a condition that Peck begin construction by 6 months from November 10, 1965. After Peck was unable to comply with this condition, a long series of correspondence and negotiations took place between the parties. After extending the construction commencement deadline several times, Holiday Inns advised Peck on October 2, 1967 that either he could have his deposit back (less Holiday Inn's expenses) or Holiday Inns would grant him an extension to January 15, 1968 to enable him to demonstrate that he had secured the necessary long-term financing,[1] in which case the deadline for commencing construction would be further extended to May 1, 1968.

Peck apparently satisfied Holiday Inns that he had obtained financing,[2] and, as a result, he received a new commitment letter dated February 23, 1968 superseding the former agreement. It is this new commitment letter that is the subject of the instant suit.

Peck and two associates (not parties to this suit) signed the February commitment letter on March 4, 1968, and an additional associate signed it on March 6, 1968. John M. Greene, Jr. then signed the letter on behalf of Holiday Inns.

In addition to superseding the former commitment letter, the new commitment letter contained two interlineated conditions. In paragraph 5, dealing with a new construction commencement date, a line was drawn through "within nine (9) months from the date of this Commitment letter" and the term "by May 1, 1968" interlineated. In paragraph 6 dealing with a

---

1. Evidently, the lack of available financing was the major factor in the delays in meeting the construction commencement deadline.

2. It appears from the record, however, that adequate financing was never actually procured.

final deadline for the completion of the facility, the term "within eighteen (18) months from the date of this commitment" is crossed out and the term "February 1, 1969" interlineated. The interlineations bore only the initials JMG.

Additional correspondence referring to the May 1, 1968 deadline was received from Holiday Inns and acknowledged by Peck. Holiday Inns subsequently advised Peck by a letter dated June 14, 1968 that the commencement deadline would be extended to July 1, 1968 with a completion deadline of April 1, 1969, and requested Peck to make these changes in his commitment letter. Peck did not respond to the request.

On June 20, 1968, Peck advised Holiday Inns that he was unable to secure long-term financing and asked Holiday Inn's assistance in securing it. In a letter dated July 1, 1968, Holiday informed Peck that his request would be denied, and that his commitment letter of February 23, 1968 was null and void under its "own terms and conditions", since the July 1, 1968 construction commencement date had not been met. The $10,000 was never returned. Peck filed suit for breach of contract on August 6, 1971.

In his complaint, Peck alleged in substance that Holiday Inns breached its agreement to issue a franchise to his associates and himself, and that, as a result, he was entitled to recover out-of-pocket expenses, the reasonable value of time spent on the project, legal and secretarial expenses incurred, and his $10,000 deposit, in a total amount of $63,269.64. In addition, he alleged that he had been deprived of a participating interest in the Holiday Inn worth $500,000. Holiday Inns answered, with a general denial of the material allegations of the complaint and affirmative defenses of failure to state a claim and failure to comply with the conditions set forth in the commitment letter.

During the trial of the case, it became apparent that major issues were whether the alteration in commencement date had been made subsequent to Peck's signing the agreement; and if so, whether it was binding on him.

█ It was the plaintiff's contention at trial that the interlineation had been made *after* he signed the commitment letter, and that he therefore had nine months to commence performance (as the commitment letter originally specified). Accordingly, the commencement date would have been November 23, 1968, not May 1, 1968 as stated in the interlineation, or July 1, 1968 as subsequently extended by Holiday Inns. Holiday Inns' July 1, 1968 declaration that the commitment letter was null and void would therefore have constituted an anticipatory breach of the contract entitling Peck to damages.[3]

The jury returned a verdict for Peck in the amount of $51,000. The trial judge had previously denied a motion for a directed verdict. After the jury's decision, he denied a motion for judgment notwithstanding the verdict, and a motion for a new trial.

Holiday Inns contends on appeal, *inter alia,* that Peck did not substantially comply with the commencement deadline provision of the contract, and that the judge's instructions concerning substantial performance were erroneous. But if the July 1 deadline did not bind Peck, then Holiday Inns would have had no right to repudiate the contract, and Peck would be entitled to damages for anticipatory breach. Thus, only if the July 1 deadline is applicable would it be necessary to reach the issue of

---

3. It is now the generally prevailing rule in both England and the United States that a definite and unconditional repudiation of the contract by a party thereto, communicated to the other, is a breach of the contract, creating an immediate right of action and other legal effects, even though it takes place long before the time prescribed for the promised performance and before conditions specified in the promise have ever occurred (footnote omitted). Corbin on Contracts, § 959 (1951).

*Cf.* Wood v. Alm, 516 P.2d 137, 140 (Alaska 1973).

substantial performance. At the close of trial the judge submitted the interrogatories to the jury, including the following:

1—Do you, the jury, find that Leonard W. Peck knew of and was bound by any May 1, 1968 deadline for the commencement of the construction prior to any extension thereof?

2—Do, you, the jury, find that Leonard W. Peck knew of, and was bound by an extension or change in the time to commence construction to July 1, 1968?

The jury responded to each in the negative so that the answers to those interrogatories indicate that the jury found that the July 1 date did not apply to Peck on the basis that he either did not know of it, or was not bound by it. If there was no reversible error in that finding, the general verdict consistent with it must be upheld.[4] Therefore, our initial inquiry is directed to determining whether the July 1 deadline was effective.

## I

## THE PROPRIETY OF THE SPECIAL INTERROGATORIES

■ Although Holiday Inns alleges that it objected to the proposed interrogatories in chambers because of their compound and legal nature, it waived any objections at trial when counsel stated: "I have no objection to the interrogatories in their present form, Your Honor."

Civil Rule 51 (a) provides in part:

No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity *shall be given to make the* objection out of the hearing of the jury, by excusing the jury or hearing objections in chambers.[5]

This court has consistently held that the purpose of Rule 51(a) is to give the trial judge the opportunity to correct any errors in the instructions. Thus, we have refused to review such alleged errors where there was no specific objection at trial.[6] However, we have also recognized that if the alleged error is "plain error" that is likely to result in a miscarriage of justice, we will consider such error even though not raised below.[7]

■ We do not consider this to be an appropriate case to apply the "plain error" rule. First, there is a distinct difference between failing to make a formal objection as occurred in Malvo v. J. C. Penney and affirmatively stating that there is no objection to the instruction. An affirmative waiver is more likely to mislead the trial judge. Second, we find that the interrogatories, if erroneous, did not result in a "miscarriage of justice".

With regard to the compound nature of the interrogatories, although it is true that a judge who tries a case without a jury must make findings of fact that specifically support his conclusions of law,[8] there is no comparable rule with respect to juries.

---

4. Civil R. 49(c), quoted *infra* n. 9.

5. This court in Goss v. State, 369 P.2d 884, 887 n. 8 (Alaska 1962), cert. denied, 371 U.S. 843, 83 S.Ct. 75, 9 L.Ed.2d 79 (1962), specifically noted that the purpose of the last sentence of Rule 51 was to provide opportunity for objections to be made out of the hearing of the jury and thus to alleviate the necessity for whispered bench conferences that would not appear in the transcript. Trial counsel must assure that objections are made on the record if they are to be relied upon on appeal. *See* Pope v. State, 480 P.2d 697, 698 (Alaska 1971).

6. *See* Bolden v. City of Kodiak, 439 P.2d 796, 802, n. 22 (Alaska 1968); Saxton v. Harris, 395 P.2d 71, 73 (Alaska 1964).

7. Merrill v. Faltin, 430 P.2d 913, 917 (Alaska 1967).; Gregory v. Padilla, 379 P.2d 951, 955 (Alaska 1963); Reiten v. Hendricks, 370 P.2d 166, 169 (Alaska 1962). *See* Malvo v. J. C. Penney, 512 P.2d 575, 584 (Alaska 1973).

8. Civil Rule 52(a) provides for findings of fact in actions tried without a jury.

Rather, Civil Rule 49(c) [9] merely allows a judge to submit written interrogatories to the jury and provides that when the answers to the interrogatories are harmonious with the general verdict, "the court shall direct the entry of the appropriate judgment." It is only when the answers to the interrogatories are inconsistent with each other or with the general verdict that the verdict may be set aside and a new trial ordered.

The interrogatories asked whether Peck "knew of" the May 1, 1968 deadline and was "bound by it" and, similarly, whether he "knew of" and was "bound by " the extension of the deadline to July 1, 1968. Both interrogatories having been answered in the negative, they are subject to the same construction. The questions were phrased in the conjunctive, so that a negative answer could indicate either an absence of knowledge of the respective deadlines or that Peck was not bound by them. Since Peck would have been entitled to recover in either event, the answers are harmonious with the general verdict.

Holiday Inns argues that it was reversible error for the court to suggest to the jury that they make the "legal" determination that Peck was not "bound by" the deadline or extension thereof; but the real issue as to whether Peck was "bound by" the deadline was whether there was an alteration of the contract by Holiday Inns after Peck signed it.

The trial judge told the jury:

You are instructed that any material alteration of a written instrument after the execution thereof, by one having a beneficial interest therein, without the consent of the other party or parties, renders such alteration void as between such nonconsenting party or parties and the person responsible for the alteration or those claiming under him.

Rather than being asked to make a general legal conclusion as to whether Peck was bound by the purported deadline if he knew of it, the jury was accordingly given specific guidance as to how the alteration issue would affect the deadline. Thus, while it appears at first blush that the "bound by" clause called for a legal conclusion, the presence of the instruction indicates that the jury was simply being asked to determine whether factual circumstances (material alteration) existed which would release Peck from the purported deadline. In view of the instruction given, the jury could have determined that Peck "knew of" the deadline after the alteration had been made without his authority, but that he was not bound by it.

 In any event, the submission of an interrogatory of a legal nature does not create a "miscarriage of justice" so as to invoke the plain error rule. It is only where an erroneous instruction creates a high likelihood that the jury followed an erroneous theory resulting in a miscarriage of justice that we would apply the "plain error" rule in a civil suit.[10] Holiday Inns

9. Civ.R. 49(c) provides:
 The court may submit to the jury, together with appropriate forms for a general verdict, written interrogatories upon one or more issues of fact the decision of which is necessary to a verdict. The court shall give such explanation or instruction as may be necessary to enable the jury both to make answers to the interrogatories and to render a general verdict, and the court shall direct the jury both to make written answers and to render a general verdict. *When the general verdict and the answers are harmonious, the court shall direct the entry of the appropriate judgment upon the verdict and answers.* When the answers are consistent with each other but one or more is in-consistent with the general verdict, the court may direct the entry of judgment in accordance with the answers, notwithstanding the general verdict or may return the jury for further consideration of its answers and verdict or may order a new trial. When the answers are inconsistent with each other and one or more is likewise inconsistent with the general verdict, the court shall not direct the entry of judgment but may return the jury for further consideration of its answers and verdict or may order a new trial (emphasis added).

10. *Cf.* Malvo v. J. C. Penney, 512 P.2d at 584 n. 14.

merely asserts that the "legal nature" of the interrogatories *might* have suggested to the jury that they could, for reasons of their own, find that Peck was not "bound by" the construction commencement deadline; that is, we are in effect asked to speculate that the jury might have adopted some erroneous theory despite the clear guideline provided by the trial court's instruction as to the requisite facts which would excuse performance before the alleged deadline. Whatever might be the merits of this argument, this is not a situation where it is highly likely that the alleged error led the jury astray, and we therefore refuse to find that the submission of the interrogatories constituted plain error.[11]

## II

## THE REFUSAL TO GRANT A DIRECTED VERDICT OR A JUDGMENT NOTWITHSTANDING THE VERDICT

■ It is well established that the proper role of this court, on review of motions for directed verdict or for judgment notwithstanding the verdict, is not to weigh conflicting evidence or judge of the credibility of the witnesses, but is rather to determine whether the evidence, when viewed in the light most favorable to the non-moving party, is such that reasonable men could not differ in their judgment.[12] In reviewing Holiday Inn's contentions on this issue, we must therefore view the evidence in the light most favorable to Peck.

Holiday Inns first argues that Peck admitted the existence of the May 1, 1968 deadline in the commitment letter he signed, and that because such an admission was conclusively binding on him, the motion for defendant's verdict should have been granted. Principal reliance is placed on the following testimony by Peck:

Q. Is that the commitment letter, as far as you know, the letter that you received on January 30th—or dated January 30th mentioned would be coming in a few days?

A. Yes, it is.

Q. It's the original of it, isn't it?

A. Yes.

Q. Bearing your signature?

A. Yes.

Q. And the other three signatures of your partners. Look on the second page of that, Paragraph 5, which says, "Construction must begin by May 1, 1968." Did you read that when you signed it?

A. (No answer)

Q. Did you read that before you signed it, Mr. Peck? This agreement?

A. I did.

Q. As a matter of fact, that May 1, 1968 deadline in Paragraph 5 was the same as the letter that you had received earlier; isn't that true?

A. (No answer)

Q. Advising you that that's what it would be. Correct?

A. That's what it says.

Although Holiday Inns argues that this testimony constitutes a "judicial admission of fact" by Peck that should be given con-

---

11. Despite our holding of an absence of "plain error", we hereby indicate our disapproval of compound interrogatories of this type being submitted to a jury.

12. *See* City of Fairbanks v. Nesbett, 432 P.2d 607, 609 (Alaska 1967):

The standard which we have adopted for this jurisdiction is that in reviewing a lower court's rulings pertaining to motions for directed verdicts or judgments notwithstanding verdict the appellate court views the evidence in its strongest light most favorable to the non-moving party. In such cases the appellate court applies an objective test in determining whether or not fairminded men in the exercise of reasonable judgment could differ. If there is room for diversity of opinion among reasonable men, then the question is one for the jury to decide [footnotes omitted]. *See also* Howarth v. Pfeifer, 423 P.2d 680, 682 (Alaska 1967); Mallonee v. Finch, 413 P.2d 159, 160 (Alaska 1966); Otis Elevator Co. v. McLaney, 406 P.2d 7, 9 (Alaska 1965).

clusive effect, a careful reading of the testimony indicates that Peck merely "admitted" that the original commitment letter shown to him at trial contained the deadline which had been referred to in a prior letter. Since it is undisputed that the interlineated document contained the deadline, Peck "admitted" nothing more than what was already established by the document itself. Had we been the triers of fact, we might well have been persuaded by Holiday Inn's argument with respect to Peck's "evasiveness", but as an appellate court we must leave such decisions, particularly where they are dependent in part on demeanor evidence, to the triers of fact.

In addition, the proposition that a party's adverse testimony is to be taken as binding against him as an admission is subject to a number of exceptions. In particular, such testimony is not conclusively binding where it is equivocal.[13] Since Peck's testimony viewed in the light most favorable to him, clearly cannot be said to

be unequivocal,[14] the aforementioned testimony did not constitute a legal admission of knowledge of the May 1, 1968 deadline, and did not foreclose a contrary finding by the jury.

Holiday Inns next contends that there is insufficient evidence to sustain the jury's verdict. In examining the record in order to ascertain whether there was sufficient evidence to indicate a factual issue as to the commencement date, we note that witness Leon Brown, one of the other signers of the February commitment letter, testified that the interlineation of the May 1, deadline was not in the agreement when he signed it.[15] Moreover, the Holiday Inns' officer who signed the contract changed his testimony at trial and indicated that the contract was not signed by him until it was returned to Holiday Inns with Peck's signature, and that the initialing of the interlineation and the officer's signature appeared to be in the same ink. From that testimony, the jury could well have in-

13. [T]he doctrine widely espoused in the recent decisions, [is] that a party's testimony adverse to himself is in general to be treated as a judicial admission, conclusive against him, so that he may not bring other witnesses to contradict it, and if he or his adversary does elicit such conflicting testimony it will be disregarded. Obviously, this general rule demands many qualifications and exceptions. Among these are the following: (1) The party is free to contract, and thus correct, his own testimony; *only when his own testimony taken as a whole unequivocally affirms the statement does the rule of conclusiveness apply.* The rule is inapplicable, moreover, when the party's testimony (2) may be attributable to inadvertence or to a foreigner's mistake as to meaning, or (3) is merely negative in effect, or (4) is avowedly uncertain, or is an estimate or opinion rather than an assertion of concrete fact, or (5) relates to a matter as to which the party could easily have been mistaken, such as the swiftly moving events just preceding a collision in which the party was injured. McCormick, Law of Evidence, § 243 at 514–15 (1st ed. 1954) (emphasis added, footnotes omitted).

14. Prior to the colloquy set out above, Peck had testified that he was "not sure" that

he had to begin construction by May 1, and that he couldn't remember whether the interlineation had been inserted at the time he signed.

15. During cross-examination, Brown testified as follows:
A. Now, that delineation [sic] wasn't in there when I signed it.
Q. Would that have made any difference to you signing it?
A. Why, sure it would have. You couldn't —because down there, it says, "Commencement of the construction is hereby defined as excavating for footings." And I have built enough buildings to know that you can't excavate before May 1st.
 * * * * *
A. . . . but they've got a delineation [sic] in there for May 1st, and that wasn't in there. It said nine months on the one that I signed, nine months from February 23rd is a lot later than July 1st or May 1st.
 * * * * *
Q. Now, Mr. Brown, are you prepared to state under Oath that at the time you placed your signature on Exhibit No. 5, that the interlineation saying "May 1, 1968" was not on the agreement?
A. Yes.

ferred that the interlineation of the May 1 commencement date occurred at the same time it was initialed—i. e. after Peck and his associates signed the agreement.[16] Viewing the evidence and reasonable inferences therefrom in the light most favorable to Peck, there is sufficient evidence in the record to indicate that reasonable men might differ as to the question of alteration of the contract after Peck signed it. The trial court did not err in denying the motion for directed verdict or for judgment notwithstanding the verdict.

■ Holiday Inns also contends on appeal that if the commitment letter sent to Peck for his signature did not contain the interlineation of the May 1, 1968 date, it should be reformed so as to conform accurately to the parties' understanding. If a party executes a written instrument knowing the intention of the other party as to the terms to be embodied therein, and knowing that the writing does not accurately express that intention, the other party may have the writing reformed to express that intention.[17]

■ Holiday Inns states that it argued at trial that if the commitment letter received by Peck did not contain the May 1 deadline, there was a mistake in integrating the agreement that should have been known to Peck so as to constitute grounds for reformation. We find, however, that Holiday Inns never contended before the trial court that the agreement should be reformed. Its actual argument was that the original contract was "amended" by Peck's subsequent acquiescence in the July 1, 1968 deadline. Since the issue of reformation was not raised before the trial court, we shall not consider it on this appeal.[18]

■ As to whether there was an amendment to the terms of the commitment letter by Peck's agreement to the July 1, 1968, deadline date, we must look to the post-February 23, 1968 correspondence. While there are references made to the May 1 deadline and the subsequent extension to July 1, there is no specific acceptance of those dates by Peck which would eliminate a factual issue for jury determination.[19] We hold that the trial

16. It is clear that this was part of the basis on which the trial judge denied the motions for defendant's verdict. With regard to Holiday Inns' arguments on the directed verdict motion, the court stated:

> [I]f the jury believes that there had been a strikeover after Mr. Peck had signed the document, then it would not be germain [sic] as to whether or not he had broken ground by the 1st of July, because he had some four months to go.

With regard to the motion for judgment notwithstanding the verdict, the court stated:

> Now the Jury well could have found that the contract as agreed upon between the parties was that set forth by the unaltered commitment letter, and so findings could— then have answered in the negative, as they did the Interrogatories 1 and 2 . . . So I feel that there was competent evidence upon which the jury could have found as they did on those interrogatories.

17. Restatement of Contracts § 505 (1932); Braund, Inc. v. White, 486 P.2d 50, 56 (Alaska 1971); Gablick v. Wolfe, 469 P.2d 391, 394 (Alaska 1970); Durkee v. Busk, 355 P.2d 588, 591 (Alaska 1960).

18. Chugach Electric Assoc. v. Lewis, 453 P.2d 345, 349 (Alaska 1969); State v. 7.536 Acres, 431 P.2d 897, 900 (Alaska 1967);

Mitchell v. Knight, 394 P.2d 892, 897 (Alaska 1964); Pollastrine v. Severance, 375 P.2d 528, 531 (Alaska 1962). Nevertheless, we note that a substantial argument could have been made against a motion for reformation. It is true that prior to the February 23, 1968 commitment letter, Holiday Inns wrote several letters referring to a May 1, 1968 date, and that on one occasion Peck indicated that he could commence construction by that date. Nevertheless, the unaltered February 23, 1968 commitment letter submitted by Holiday Inns set forth a 9-month period to commence construction. Particularly in view of the many prior changes in the deadline dates, it is not an unreasonable inference that Holiday Inn's executive committee, which authorized the letter, had decided on the longer period. We further note that Holiday Inns, had it doubted that the written integration accurately reflected the bargain reached in prior negotiations, could have returned the interlineated commitment letter for Peck's signature and instituted an action for reformation if Peck had refused to acknowledge the interlineation.

19. Holiday Inns refers to a telegram sent by Peck, in answer to a letter dated April 15 which referred to the May 1 deadline and suggested that Peck submit an application

court was correct in not finding as a matter of law that Peck was bound by a July 1 deadline.

binding on him, we hold that the trial court did not abuse its discretion by denying the motion for a new trial.

## III

### THE MOTION FOR A NEW TRIAL ·

This court has consistently held that the granting or denial of a new trial is within the sound discretion of the trial judge, and that this court will interfere with that discretion only in the most exceptional circumstances to prevent a miscarriage of justice. We have further stated that a "miscarriage of justice" is not present where evidence to support the verdict is not completely lacking and is not so slight and unconvincing as to make the verdict plainly unreasonable and unjust.[20]

██ Since, as was discussed above, there is sufficient evidence in the record from which the jury might have found that the interlineations were made after Peck signed the contract and thus were not

## IV

### SUBSTANTIAL PERFORMANCE BY PECK

Holiday Inns also argues that there was no basis for the jury to find substantial performance by Peck so as to justify a determination that he was not in breach of the contract on July 1, 1968. It is apparent that the issue of "substantial performance" only arises if the altered date of the contract controls. Without the alteration, Peck had 9 months from February 23, 1968—or until November 23, 1968—within which time to commence construction, but Holiday Inns declared the contract null and void by its letter of July 1, 1968. The jury's answers to the interrogatories indicate that it found the May and July deadlines not to be binding. Accordingly, Holiday Inns was in anticipatory breach of the

---

for an extension if he could not make the May 1 deadline.

Peck wired back: "Your letter 4–16–68 received. Frost conditions here caused from light snow cover past winter has caused a 30 day delay in start of construction. May 1st too early to break ground this year." Holiday Inns argues that this was a "request" for an extension and an acknowledgment of the May 1 deadline so that Peck had a duty to correct the subsequent letter of June 14, 1968 "amending" the deadline to July 1, 1968.

However, the telegram might also be considered as a mere protest that May 1 was too early to break ground with no indication that the deadline was binding on him. That is, Peck would have no reason to request an "extension" if the deadline was in fact 9 months after the February commitment letter; and although it is somewhat illogical that he would not have protested to Holiday Inns that they had the wrong deadline in mind, this was still a jury question, as the court below expressly ruled.

Holiday Inns' contention that Peck was required to notify the corporation of the error in its June 14 letter or be barred by it must be rejected, for such a result would place the onerous burden on any party to

a contract of correcting any letter differing from the contract.

We also note that there has been no showing of consideration for such an amendment. Consideration is required for modification, amendment or recision of a contract. Northern Commercial Co. v. United Airmotive, 13 Alaska 503, 506–507, 101 F.Supp. 169 (1951); Carothers v. Carothers, 488 P.2d 1185, 1188 (Or.1971); but see AS 45.05.066 respecting Uniform Commercial Code sales.

20. In Ahlstrom v. Cummings, 388 P.2d 261, 262 (Alaska 1964), we held:

> The matter of granting or refusing a new trial rests in the sound discretion of the trial judge. We shall not interfere with the exercise of his discretion except in the most exceptional circumstances and to prevent a miscarriage of justice. . . . From a review of the record we cannot say that evidence to support the verdict was completely lacking or was so slight and unconvincing as to make the verdict plainly unreasonable and unjust [footnotes omitted].

See also United Bonding Ins. Co. v. Castle, 444 P.2d 454, 455 (Alaska 1968); West v. Administratrix of Estate of Nershak, 440 P.2d 119, 121 (Alaska 1968); Mallonee v. Finch, 413 P.2d 159, 162 (Alaska 1966).

contract by reason of its July 1, 1968 repudiation. Therefore, we need not decide whether there was sufficient evidence to go to the jury on the question of substantial performance.

The judgment below is affirmed.

Affirmed.