ALASKA INTERNATIONAL INDUSTRIES, INC., an Alaska Corporation,

and

Weaver Brothers, Inc., a Foreign Corporation, Appellants/Cross-Appellees,

v.

Charles A. MUSARRA, Appellee/Cross-Appellant.

Nos. 3652, 3676.

Supreme Court of Alaska.

Nov. 16, 1979.

---

Ronald D. Flansburg, Olympia, Charles E. Tulin, Anchorage, for appellants/cross-appellees.

J. L. McCarrey, III, McCarrey & McCarrey, Anchorage, for appellee/cross-appellant.

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER, BURKE and MATTHEWS, JJ.

## OPINION

RABINOWITZ, Chief Justice.

This matter involves an appeal from a jury verdict in an action brought pursuant to Alaska's Wage and Hour Act, AS 23.10.-050–150. The jury found in favor of the employee, Charles Musarra, in the amount of $37,498.03 as overtime compensation due from Alaska International Industries (AII) and Weaver Brothers, Inc. and rejected AII and Weaver Brothers' claims of exemption from the overtime provisions of the Wage and Hour Act under established categories for bona fide executive, administrative, professional and supervisory employees.

Charles Musarra was hired as a systems analyst by AII on January 29, 1975. A systems analyst is "a person that takes something that's usually being done manually, a function, be it accounting function, an inventory function, a payroll function, anything of this nature, and develops the methods, procedures, and general outlines or programs along with the necessary forms to convert that particular manual system into a computerized system." During the course of his employment, Musarra was responsible for the implementation of systems programs for the IBM computers at both AII and at appellant Weaver Brothers, a wholly owned subsidiary of AII which employed Musarra as its credit manager and subsequently also as its supervisor of accounts receivable until termination of Musarra's employment on February 13, 1976. There was apparently no discussion at the time Musarra was hired concerning the number of hours he would be required to work, and he was paid a monthly salary thereafter. No provision for overtime pay was made by AII in regard to Musarra's employment. Though he never requested overtime pay in writing during his employment, Musarra testified that on more than one occasion he made an oral demand for overtime compensation.

After Musarra's employment with AII and Weaver Brothers was terminated, he instituted an action in superior court under the Alaska Wage and Hour Act for compensation for approximately 1920 hours of overtime for which he had not been paid by appellants. AII and Weaver Brothers defended on the ground that Musarra was excepted from the provisions of the Wage and Hour Act by AS 23.10.055(9), as an individual employed in a bona fide executive, administrative or professional capacity or alternatively, as a supervisory employee

under AS 23.10.060. In its instructions to the jury, the superior court gave the following two instructions which are focal points of this appeal.

### Instruction No. 15

'Supervisory' means a person who directs the activities of other employees and who does not perform duties which are regularly performed by the employees supervised, except for brief periods of time not to exceed more than 8 hours in the supervisor's workweek.

### Instruction No. 19

Although plaintiff might not have been employed in a supervisory, administrative, executive or professional capacity a sufficient fraction of his working time to be exempt from the overtime pay requirement under one of these capacities alone, he may still be exempt if:

(1) He performed work in more than one of the exempt capacities; and

(2) He spent as large a part of his work time in two or more of the exempt capacities as would be necessary to be exempt under the more restrictive applicable exempt category alone.

As mentioned at the outset, the jury returned a special verdict in Musarra's favor, awarding him $37,498.03 in additional compensation for overtime work. AII and Weaver Brothers subsequently moved for a new trial, and Musarra moved for additur or, alternatively, for judgment notwithstanding the verdict. The motions were denied, and this appeal and cross-appeal followed.

Initially, we are presented with the question of whether appellants AII and Weaver Brothers sufficiently voiced their objections to the instructions to preserve the alleged errors on appeal.[1] Under the standards we have previously articulated, we conclude that counsel for appellants adequately objected to jury instruction number 15.[2] There was no objection by appellants to instruction number 19 in the superior court. Therefore, we are not presented with a question as to the sufficiency of the objection to this instruction in the superior court. However, as will be discussed subsequently,[3] this latter instruction is not critical to the resolution of this appeal.

---

1. Alaska R.Civ.P. 51(a) provides, in relevant part:

 No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection.

 This rule requires the objecting party to put the court and opposing counsel on notice as to the claimed defect in the instruction. *Reader v. Ghemm Co., Inc.*, 490 P.2d 1200, 1202–03 n.1 (Alaska 1971). In *Saxton v. Harris*, 395 P.2d 71, 73 (Alaska 1964) (footnote omitted), we observed that:

 The purpose of this rule is to enable the trial judge to avoid error by affording him an opportunity to correct his charge before it goes to the jury. The dictates of the rule are satisfied only if the judge is clearly made aware of the alleged error in or omission from the instructions. Counsel's objections must be specific enough to clearly bring into focus the precise nature of the asserted error.

 *See also City of Nome v. Ailak*, 570 P.2d 162, 171 n.23 (Alaska 1977); *McLinn v. Kodiak Elec. Assoc., Inc.*, 546 P.2d 1305, 1311–12 n.15 (Alaska 1976); *Girves v. Kenai Peninsula Borough*, 536 P.2d 1221, 1223 (Alaska 1975); *Holi-*

*day Inns of America, Inc. v. Peck*, 520 P.2d 87, 90 (Alaska 1974).

2. The record shows the following with regard to the scope of appellants' objection to instruction number 15. Appellants' attorney stated: "Well, there's a lot of things here to this case that say supervisor, and I guess we're dealing just with the question of whether this eighth hour distinction has any merit in this case." The statement was made in an argument to the superior court based on a federal district court case, *Wirz v. Arcata Plywood Corp.*, [1969] 4 Lab.L.Rep. (59 Lab.Cas.) ¶ 32,131, at 43,676 (CCH) (C.D.Cal.1969). Appellants' attorney argued that when an employee works the kind of hours Musarra testified that he worked, especially in a small firm operation where there are only a few other employees in the department, by necessity the employee will have to perform a substantial amount of "backup" work which would be performed by non-supervisory employees during normal business hours. Thus, appellants' counsel in effect, asserted that the eight-hour limitation on non-exempt activities should not apply to the particular circumstances of Musarra's employment.

3. *See* note 4 *infra*.

■ We now turn to the substantive question of whether the jury was improperly instructed by jury instruction number 15 that a supervisory employee may not perform duties which are regularly performed by the employees supervised, "except for brief periods of time not to exceed more than 8 hours in the supervisor's workweek." [4] The jury instruction given was taken verbatim from the Alaska Administrative Code definition of "supervisory" as used in AS 23.10.060.[5] Appellants do not challenge the validity of the regulation directly but, rather, maintain that the error in the instruction was due to the superior court's improper definition of a supervisor's work week as being limited to forty hours as a matter of law. At trial, appellants argued that the intent of the regulation is to exempt employees who do not work over twenty percent (eight hours out of forty) in a non-exempt category rather than those who do not work eight hours in non-exempt categories regardless of the number of hours worked in a week. Based on their interpretation of federal cases construing the Federal Labor Standards Act, appellants argue that notwithstanding the fact that a "regular work week" is forty hours under both federal and Alaska law,[6] an employee's work week is actually "a fixed and regularly accruing period of 168 hours (7 consecutive 24 hour periods)." [7]

■ We note that, in deciding this question, we are simultaneously engaged in determining the validity of the regulation which defines "supervisory" for purposes of AS 23.10.060, since the regulation and the

---

**4.** Appellants additionally object to the language in jury instruction no. 19 which advises the jury to apply the requirements of "the most restrictive applicable exempt category" if the jury combines the number of hours spent in supervisory, administrative, executive, and professional capacities for purposes of deciding that Musarra was an exempt employee. Appellants assert that this instruction requires the jury to apply the unduly restrictive definition of supervisory in instruction no. 15, since that category is the most restrictive under the instructions given by the court in this case. Thus, appellants argue that "the error previously discussed in Instruction No. 15 also contaminates Instruction No. 19."

As we read these arguments in appellants' briefs in this case, the challenge to the combined effect of instructions nos. 15 and 19 is actually a challenge to instruction no. 15 only because appellants do not contend that application of the "most restrictive applicable exempt category" test of instruction no. 19 is an improper instruction by itself. Instruction no. 19 is a problem in the present case only because it requires application of the allegedly unduly restrictive limitation on the supervisory exemption in instruction no. 15 to the combination exemption. Thus, we need not reach the separate issue of whether, in combination exemptions under the Alaska Wage and Hour Act, the employee must meet the strictest requirements on non-exempt work. We note in passing, however, that under the similar Federal Labor Standards Act the most restrictive exempt category test does apply to combination exemptions from overtime pay. See 29 CFR § 541.-600.

**5.** Jury Instruction No. 15 stated:

'Supervisory' means a person who directs the activities of other employees and who does not perform duties which are regularly performed by the employees supervised, except for brief periods of time not to exceed more than 8 hours in the supervisor's work week.

"Supervisory" is defined as follows in 8 AAC 15.070(h):

'Supervisory' as used in AS 23.10.060, means a person . . . who directs the activities of other employees and who does not perform duties which are regularly performed by the employees supervised, except for brief periods of time not to exceed more than 8 hours in the supervisor's work week.

**6.** See 29 U.S.C. § 207; AS 23.10.060.

**7.** Numerous cases hold that a work week consists of seven consecutive days in which work is performed. *Roland Elec. Co. v. Black,* 163 F.2d 417 (4th Cir. 1947), *cert. denied,* 333 U.S. 854, 68 S.Ct. 72, 92 L.Ed. 1135 (1948); *Barclay v. Magnolia Petroleum Co.,* 203 S.W.2d 626 (Tex.Civ.App.1947). *See Overnight Motor Transp. Co. v. Missel,* 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682 (1942). The concept of a work week does not limit the number of hours an employee may work; rather, it includes all of the time the employee is required to be on the employer's premises or at a prescribed work place. *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946); *Lasater v. Hercules Powder Co.,* 73 F.Supp. 264 (D.Tenn.1947), *aff'd,* 171 F.2d 263 (6th Cir. 1948); *Plourde v. Massachusetts Cities Realty Co.,* 47 F.Supp. 668 (D.Mass. 1935); *Gladden v. Kansas City,* 536 S.W.2d 478 (Mo.App.1976); *State v. Comfort Cab, Inc.,* 118 N.J.Super. 162, 286 A.2d 742 (1972).

instruction are worded identically.[8] Appellants' claim is that the eight-hour limitation on non-exempt work performed by employees otherwise classified as "supervisory" was erroneous in this case. Since the limitation was required by 8 AAC 15.070(h), the instruction can only be improper if the regulation is also invalid. Thus, it is appropriate to review the definition of "supervisory" based on the standards articulated in *Kelly v. Zamarello*, 486 P.2d 906, 911 (Alaska 1971),[9] namely, whether the agency acted within its "scope of authority" and in a "reasonable and not arbitrary" manner.[10]

That the promulgating agency acted within the scope of its authority is clear from the terms of the authorizing statute, AS 23.10.085(b):

> The regulations may, without limiting the generality of (a) of this section, define terms used in §§ 50–150 of this chapter . . . .[11]

The further question of whether the regulation is "reasonable and not arbitrary" must be resolved by examining the Wage and Hour Act and regulations promulgated thereunder and by drawing inferences as to the purposes of the particular regulation at issue in this case.

■ Preliminarily, it should be noted that supervisory employees are treated differently under the Wage and Hour Act from individuals employed in "bona. fide executive, administrative, or professional"[12] capacities. Executive, administrative and professional employees are exempted from all of the provisions of the Wage and Hour Act.[13] In contrast, supervisory employees are specifically exempted from payment for overtime,[14] but retain the protections of all of the other requirements of the Act, including the minimum wage provision,[15] the requirement that employers keep records of the hours worked, the rate of pay, etc. for each employee,[16] and the availability of certain civil remedies in case of violations of the Act by employers.[17] This separate, more limited exemption of supervisory employees is not paralleled in the federal Fair Labor Standards Act.[18] However, the fed-

---

8. *See* note 5 *supra.*

9. An administrative regulation is accorded a presumption of validity and the challenger of the regulation bears the burden of demonstrating its invalidity. *Union Oil of Cal. v. State, Dep't of Natural Resources*, 574 P.2d 1266, 1271 (Alaska 1978). The standard of judicial review for a "legislative" type regulation is limited in nature. *Kelly v. Zamarello*, 486 P.2d 906, 911 (Alaska 1971), provides for review of such a regulation in the following manner:

> First, we will ascertain whether the regulation is consistent with and reasonably necessary to carry out the purposes of the statutory provisions conferring rule-making authority on the agency. This aspect of review insures that the agency has not exceeded the power delegated by the legislature. Second, we will determine whether the regulation is reasonable and not arbitrary. This latter inquiry is proper in the review of any legislative enactment.

It is established that, in refusing to substitute its judgment for that of the administrative agency as to the efficacy of the regulation, this court will decline to review the "wisdom" of a particular regulation. *Kingery v. Chapple*, 504 P.2d 831, 835 (Alaska 1972).

10. *See also Kingery v. Chapple*, 504 P.2d 831, 835 (Alaska 1972).

11. AS 23.10.085(a) provides general authority for the promulgation of regulations "not inconsistent with the purposes and provisions" of the Alaska Wage and Hour Act, AS 23.10.050–150, "which are necessary for the administration of §§ 50–150 of this chapter."

12. AS 23.10.055(9).

13. *Id.*

14. AS 23.10.060.

15. AS 23.10.065.

16. AS 23.10.100.

17. AS 23.10.110.

18. *See* 29 U.S.C. §§ 201–19. The federal statute contains a general exemption for executive, administrative and professional employees but has no specific exemption for employees acting in a supervisory capacity. 29 U.S.C. § 213(a)(1). The corresponding federal administrative regulations do not define the word "supervisory," therefore, except to the extent that an individual must normally supervise other employees in order to qualify as an exempt executive employee under the federal Fair Labor Standards Act. 29 C.F.R. § 541.105.

As a result of the differences between the state and federal Acts in this regard, the federal

eral regulations expressly recognized that local or state law on payment of overtime may differ from the standards set forth in the federal statute. The applicable regulation, 29 C.F.R. § 778.5, provides, in part:

Where such legislation is applicable and does not contravene the requirements of the Fair Labor Standards Act, nothing in the act, the regulations or the interpretations announced by the Administrator should be taken to override or nullify the provisions of these laws.

Nevertheless, it should be noted that "[c]ompliance with other applicable legislation does not excuse noncompliance with the Fair Labor Standards Act."[19] Thus, it is only where state law is more restrictive or more favorable to the employee that it governs in lieu of the federal act.[20]

■ Administrative regulations promulgated pursuant to the Alaska Wage and Hour Act distinguish between administrative, executive, and professional employees who uniformly are allowed to spend a percentage of the hours in the employee's total work week performing non-exempt activities, and supervisory employees,[21] whose limitation on non-exempt work is clearly stated in terms of "brief periods of time not to exceed more than 8 hours in the supervisor's work week."[22] This differential treatment of supervisory employees on the one hand and administrative, executive, and professional employees on the other hand follows the distinction drawn by the statute itself, in exempting the latter classes of employees from the Wage and Hour Act totally, while exempting the former class only from the overtime provisions.

The eight-hour restriction on non-exempt work performed by supervisory employees included in the administrative code embodies a relatively protective attitude toward such employees in comparison to the arguably higher managerial categories of administrative, executive, and professional employees. This attitude, of course, also is reflected in the statute which provides supervisory employees with the additional protections noted above. The flat eight-hour limitation on the amount of time a supervisory employee may perform non-supervisory functions during the work week reasonably may be intended to prevent employers from taking advantage of their supervisors by requiring them to work an excessive number of hours, most of which are spent doing non-supervisory tasks. As the superior court recognized, "it is reasonable to assume that if the necessities of the job operation are such that the supervisor must spend many hours doing the same work as the employees he or she supervises, whether it be in a small office or otherwise, you've got to pay your managerial employees overtime."[23]

---

cases discussing supervisory duties are not directly on point. The emphasis in those cases is on supervisory responsibilities in relation to the requirements of the executive exemption from the Act. Consequently, the precise issue of how much time must be spent in supervising activities in order to qualify as a supervisor is not considered by those opinions except within the context of discussing the limited amount of time an exempt executive employee can spend performing non-exempt work. *See Petrlik v. Community Realty Co.*, 347 F.Supp. 638 (D.Md. 1972); *Smith v. Hudson*, 249 F.Supp. 92 (D.S.C. 1966); *Mitchell v. Reynolds*, 125 F.Supp. 337 (W.D.Ark.1954); *Renfroe v. Wilson & Co., Inc.*, 90 F.Supp. 581 (N.D.Fla.1950); *Bloch v. Bell*, 63 F.Supp. 863 (W.D.Ky.1945), *aff'd*, 152 F.2d 962 (6th Cir. 1946); *Walling v. Emery Wholesale Corp.*, 49 F.Supp. 192 (N.D.Ga.1943), *aff'd*, 138 F.2d 548 (5th Cir. 1943).

**19.** 29 C.F.R. § 778.5.

**20.** State law also applies in those limited situations in which connections to interstate commerce do not exist sufficient to come under the protection of the federal statute. *See, e. g., Overstreet v. North Shore Corp.*, 318 U.S. 125, 63 S.Ct. 494, 87 L.Ed. 656 (1942); *State v. Comfort Cab, Inc.*, 118 N.J.Super. 162, 286 A.2d 742 (1972).

**21.** 8 AAC 15.070(a) defines "administrative"; subsection (d) defines "executive"; subsection (g) defines "professional"; and subsection (h) defines "supervisory."

**22.** 8 AAC 15.070(h).

**23.** Appellants have cited *Wirtz v. Arcata Plywood Corp.*, [1969] 4 Lab.L.Rep. (59 Lab.Cas.) ¶ 32,131, at 43,676 (CCH) (C.D.Cal.1969), for the proposition that even though very little of a supervisory employee's time is spent actually directing the activities of the other employees

Given the foregoing rationale for the express eight-hour limitation in the regulation, we hold that the regulation is "reasonable and not arbitrary" under the review standards espoused in *Kelly v. Zamarello*, 486 P.2d 906, 911 (Alaska 1971). Consequently, we conclude that instruction number 15 embodies a correct statement of the law and that the superior court did not err in giving the instruction.

Cross-appellant Musarra contends that the jury failed to double the award of overtime compensation as it was required to do by the terms of the governing statute, AS 23.10.110(a), which provides for an additional award of an amount equal to the amount of unpaid overtime as liquidated damages.[24] Musarra further contends that the superior court failed to double the jury's award upon cross-appellant's motions as it was required to do by law and that, therefore, this court should order the award of damages to be doubled in cross-appellant's favor. Cross-appellees AII and Weaver Brothers argue to the contrary that the determination of damages is within the province of the jury and that we should not disturb the jury's verdict for this reason.

Review of the jury instruction given and the form of the special verdict shows that the jury was ambiguously instructed regarding liquidated damages. Jury instruction number 14 stated, in part:

of the department, he is still an exempt executive employee. However, the *Wirtz* case is inapplicable to exemptions under the Alaska Wage and Hour Act because the actual holding of the court was that the employee came within the so-called "high salary" exemption to the federal Fair Labor Standards Act. 29 C.F.R. § 541.1(f). Thus, the employee in *Wirtz* was actually exempted based on his salary level, a status which is "deemed to meet all the requirements of this section." There is no comparable exception under the Alaska Wage and Hour Act and accompanying regulations.

24. AS 23.10.110(a) provides:
(a) An employer who violates a provision of § 60 or 65 of the chapter is liable to an employee affected in the amount of his unpaid minimum wages, or unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.

An employer who violates this provision is liable to an employee affected in the amount of his unpaid overtime compensation, and in an equal additional amount as liquidated damages.

The special verdict form was divided into two interrogatories to the jury:

1. Was plaintiff employed by defendant in a supervisory, executive, administrative, or professional capacity, or such a combination of those capacities as to be exempt from the requirement that he be paid one and one-half his regular rate of pay for overtime work?

2. If the answer to question number one is no, then what is the amount of additional compensation to which plaintiff is entitled for overtime work?
 State a dollar amount.

The jury answered the first interrogatory in the negative and set the dollar amount of damages at $37,498.03, which was the exact amount Musarra claimed he was entitled to for overtime compensation.

■ We need not decide the cross-appellees' contention that Musarra failed to object adequately to instruction number 14 or to special verdict number 2 because we conclude that, in any event, ambiguities in instruction number 14 and the special verdict form constituted plain error.[25] There was no clear instruction in this case which

25. Failure to object to the form of a special interrogatory has been treated identically to failure to object to any other instruction. *Holiday Inns of America, Inc. v. Peck*, 520 P.2d 87, 91 (Alaska 1974). In that case, we said:

It is only where an erroneous instruction creates a high likelihood that the jury followed an erroneous theory resulting in a miscarriage of justice that we would apply the 'plain error' rule in a civil suit.

*See also City of Nome v. Ailak*, 570 P.2d 162, 177 (Alaska 1977) (indicating that jury instructions which set forth an entirely erroneous standard of liability would normally be considered to be plain error, where the result of the case might have been altered by the improper statements).

would render merely speculative our consideration of whether the jury may have disregarded the instruction regarding the award of liquidated damages.[26] In our view, under the instructions given it is likely that the jury became confused concerning whether they were to double the amount found to equal Musarra's damages.

 A number of factors have persuaded us that the jury erred in failing to award liquidated damages. At the close of the trial, the jury granted Musarra the exact amount of overtime compensation he had requested, based on the hours of overtime that he stated he had worked. Further, no evidence was produced at trial by AII or Weaver Brothers which contradicted Musarra's statement of the number of hours he had worked overtime.[27] Thus, there is no amount between $0 and the full amount to which Musarra claims he is entitled that could have been awarded. Also, we note that the figure awarded, $37,498.03, is an odd number, which indicates that it could not have been a multiple of two of any other whole number. Thus, we conclude that the jury's award was equal to the amount of overtime compensation due Musarra, before adding an equal amount of liquidated damages to it as the statute requires.[28]

The foregoing brings us to the final question presented in this appeal, namely, whether the damages should be increased as a matter of law by the superior court, or whether the jury should be given proper instructions on the award of liquidated damages following a new trial.

The starting point of our inquiry is the statutory provision which grants liquidated damages to an employee improperly excluded from overtime compensation under the Alaska Wage and Hour Act. AS 23.10.110(a) provides:

(a) An employer who violates a provision of §§ 60 or 65 of the chapter is liable to an employee affected in the amount of his unpaid minimum wages, or unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.

A similar federal statute which allows for liquidated damages[29] has been interpreted extensively by the federal courts, and we

26. In contrast, in *Holiday Inns of America, Inc. v. Peck*, 520 P.2d 87 (Alaska 1974), the appellant had merely asserted that the "legal nature" of the interrogatories might have suggested to the jury that they could, for reasons of their own, adopt an erroneous theory despite the clear guidelines provided by the superior court's instruction. We rejected this claim, stating:

> Whatever might be the merits of this argument, this is not a situation where it is highly likely that the alleged error led the jury astray, and we therefore refuse to find that the submission of the interrogatories constituted plain error.

*Id.* at 92.

27. Under the Alaska Wage and Hour Act, the employer has a statutory duty to keep records of "the rate of pay and the amount paid each pay period to each employee [and] the hours worked each day and each workweek by each employee . . . ." AS 23.10.100(a). Musarra cites cases interpreting the federal Fair Labor Standards Act in support of his position that where an employee fails to keep the required records, the employee has only the initial burden of producing sufficient evidence to show the amount and extent of work for which he was improperly compensated. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed, or evidence sufficient to negate the reasonableness of the inference to be drawn from the employee's evidence. *See, e. g., Mumbower v. Callicott*, 526 F.2d 1183 (8th Cir. 1975); *Hodgson v. American Concrete Co., Inc.*, 471 F.2d 1183 (6th Cir. 1973); *Shultz v. Hinojosa*, 432 F.2d 259 (5th Cir. 1970).

28. *See* AS 23.10.110(a). In reaching our conclusion, we have not considered the affidavit of the jury foreman, the use of which constituted a separate issue in this appeal. *See Elisovsky v. State*, 592 P.2d 1221 (Alaska 1979); *Irving v. Bullock*, 549 P.2d 1184 (Alaska 1976); Alaska R.Evid. 606(b).

29. The liquidated damages provision of the federal Fair Labor Standards Act is 29 U.S.C. § 216(b) which states, in part:

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.

think these cases are useful in construing the corresponding Alaska statute. Older federal decisions found that the assessment of liquidated damages under 29 U.S.C. § 216(b) could not be waived or compromised by agreement between the employer and the employee;[30] nor could liquidated damages be avoided by the good faith of the employer.[31] In fact, the seeming inflexibility of the provision's effect on employers and its mandatory character were the specific objects of relief legislation in the form of a 1947 amendment to the federal Act. 29 U.S.C. § 260[32] now provides that the good faith of an employer and "reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act" renders the award of liquidated damages discretionary with the trial court.[33] The federal cases interpreting this provision make it clear that the decision on liquidated damages it mandatory except where the employer is able to show that he is within the "good faith" exception to the requirement[34] and that, in any case, the decision to award liquidated damages is to be made by the trial judge and not by the jury.[35]

The Alaska Wage and Hour Act contains no "good faith" exception to the mandatory award of liquidated damages in cases brought pursuant to AS 23.10.110. Therefore, since the Alaska statute encompasses essentially the same purposes as the federal Act, we think it is logical to conclude that liquidated damages under the Alaska Wage and Hour Act must be granted as a matter of law in the same manner as they were granted by the federal courts as a matter of course prior to the enactment of the "good faith" amendment to the federal liquidated damages provision.[36]

Given our conclusion that the award of liquidated damages is mandatory in this case, we conclude that there was no reason to submit the issue to the jury in the first trial, and that the award for liquidated damages should be made by the superior court upon remand.

Affirmed in part, Modified in part.

---

**30.** *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 65 S.Ct. 895, 89 L.Ed. 1296 (1945).

**31.** *Missel v. Overnight Motor Transp. Co.*, 126 F.2d 98 (4th Cir. 1942), aff'd 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682 (1942).

**32.** 29 U.S.C. § 260 provides:
In any action commenced prior to or on or after May 14, 1947 to recover unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended, if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title.

**33.** *See, e. g., Hays v. Republic Steel Corp.*, 531 F.2d 1307 (5th Cir. 1976); *Boll v. Federal Reserve Bank*, 365 F.Supp. 637 (D.Mo.1973); aff'd, 497 F.2d 335 (8 Cir.); *White v. Beckman Dairy Co.*, 352 F.Supp. 1266 (D.Ark.1973).

**34.** *E. g., Hayes v. Bill Haley & His Comets, Inc.*, 274 F.Supp. 34 (W.D.Pa.1967). *See* H. Doc. No. 247, 80th Cong., 1st Sess. 2 (1947) (President's message of transmittal).

**35.** The constitutionality of the court's determination of the good faith exception to an award of liquidated damages has been upheld. *See, e. g., Martin v. Detroit Marine Terminals, Inc.*, 189 F.Supp. 579 (N.D.Mich.1960); *Brown v. Consolidated Vultee Aircraft Corp.*, 80 F.Supp. 257 (D.Ky.1948).

**36.** *See* cases cited in notes 30 and 31 *supra*.