Paulette HOUT, Appellant,

v.

NANA COMMERCIAL CATERING, A DIVISION OF NANA DEVELOPMENT CORPORATION, and Brinkerhoff-Nabors, Joint Venture 36, Appellees.

No. 5224.

Supreme Court of Alaska.

Dec. 31, 1981.

Karl L. Walter, Jr., Benkert & Walter, Anchorage, for appellant.

Phillip J. Eide, Ely, Guess & Rudd, Anchorage, for appellee NANA Development Corp.

Terrance A. Turner, Owens & Turner, Anchorage, for appellee Brinkerhoff-Nabors Joint Venture 36.

## OPINION

Before RABINOWITZ, C. J., and CONNOR, BURKE, MATTHEWS and COMPTON, JJ.

COMPTON, Justice.

Paulette Hout brought suit against NANA Commercial Catering, Inc. [NANA] and Brinkerhoff-Nabors Joint Venture 36 [Brinkerhoff], alleging she was dismissed from her employment with NANA for discriminatory reasons. Hout alleged NANA dismissed her because of her sex, marital status,[1] and national origin,[2] in violation of AS 18.80.220(a)(1).[3] She alleges Brinkerhoff "coerced" NANA into discharging her in violation of AS 18.80.260.[4]

A jury trial was held on the issue of liability. At the close of Hout's case the trial court granted Brinkerhoff's motion for a directed verdict. The jury returned a verdict in favor of NANA. Hout appeals from the jury verdict in favor of NANA, arguing the trial court failed to instruct the jury as to the proper method of proof and

---

1. Hout was a single woman when she started to work for NANA. She married Frank Hout, a Brinkerhoff employee, a little over a year later. She alleged animus against her marriage existed among NANA and Brinkerhoff employees.

2. Hout was born in France. She came to the United States in 1953 and has a strong French accent.

3. AS 18.80.220 provides in part:
   (a) It is unlawful for
   (1) an employer to refuse employment to a person, or to bar him from employment, or to discriminate against him in compensation or in a term, condition, or privilege of employment because of his race, religion, color or national origin, or because of his age, physical handicap, sex, marital status, changes in marital status, pregnancy or parenthood when the reasonable demands of the position do not require distinction on the basis of age, physical handicap, sex, marital status, changes in marital status, pregnancy or parenthood.

4. AS 18.80.260 provides: "It is unlawful for a person to aid, abet, incite, compel or coerce the doing of an act forbidden under this chapter [Human Rights Act] or to attempt to do so."

the correct burden of proof. She further argues she was prejudiced by the trial court's erroneous exclusion of relevant and admissible evidence of NANA's liability. Hout also appeals from the directed verdict, arguing the trial court erred in excluding testimony that showed Brinkerhoff's participation in the discrimination and, as a result, the court based the directed verdict on an incomplete record.

## I. Statement of Facts

In early 1976 Brinkerhoff operated an oil and gas well drilling rig on the North Slope of Alaska. The company contracted with NANA to provide catering and janitorial services for Brinkerhoff employees who were provided room and board at an on-site camp. As an independent contractor, NANA was to supervise all affairs of its employees, including hiring and firing.[5] NANA's staff at the rig consisted of five employees. The head cook was NANA's on-site supervisor.

In April 1976 Fairbanks Culinary Union Local 879 dispatched Hout to work for NANA on the rig. She was the first woman to be employed at the camp. Her supervisor from the time she arrived until she was dismissed twenty-two months later was Paul Smith, the head cook.

In presenting her case at trial, Hout primarily relied on oral testimony of communications between herself and Smith and conversations between various Brinkerhoff and NANA employees. Most of her testimonial evidence in turn was contradicted by the testimony of the defendants' witnesses. She attempted to prove Smith showed a definite animus toward her, gave her the more difficult jobs, and watched her more closely than he did the other workers. She produced evidence that Smith and others disapproved of her marriage to Frank Hout and restricted her activities at the camp.

She testified that during her last six months of employment Smith repeatedly told her the Brinkerhoff toolpushers did not want her on the rig and she should look for another job.

In rebuttal, NANA produced testimony that Hout displayed an "insubordinate" attitude in that she constantly argued with her supervisors and frequently refused to follow legitimate work requests. Through the testimony of various Brinkerhoff and NANA employees, counsel for the defendants attempted to show that some of the workers tended to criticize Hout because she has a loud voice, she is often difficult to understand due to her accent, and she has a tendency to "meddle" in others' affairs; not because she is a woman, or she is French, or she is married.

Hout also attempted to show that two Brinkerhoff toolpushers repeatedly complained to Smith that they did not want her on the rig because of her sex, national origin, and marital status, and that other NANA employees were dismissed after Brinkerhoff employees complained about them to Smith. Brinkerhoff attempted to show that its employees' complaints were nothing more than oil rig talk and that the toolpushers had no authority to effect the dismissal of a NANA employee. Smith denied that Brinkerhoff toolpushers were responsible in any way for the decision to fire Hout.

Hout was dismissed by Smith in January 1978, purportedly for insubordination and the improper control of merchandise. On the morning of her dismissal Hout and Smith argued about her work and she said she would talk with her union shop steward. Smith called his superior and received authorization to dismiss Hout.[6] After she was dismissed a man was transferred into her position. A few days later, NANA dis-

---

**5.** The contract provided that NANA was to replace within a reasonable time employees who failed to perform their work or to conduct themselves to Brinkerhoff's satisfaction. If a NANA employee violated a Brinkerhoff camp rule, the toolpushers (Brinkerhoff field-level supervisors) were required to report the problem to NANA's on-site supervisor, the head cook.

NANA's head cook was obliged to confer with NANA management to resolve the problem.

**6.** Smith's superior testified that he felt the situation had deteriorated to a point that Hout's presence interfered with the smooth operation of NANA's work on the rig.

patched a woman to work on the rig but she did not fill the position Hout had held.

## II. Jury Instructions

■ Hout challenges four of the jury instructions relating to NANA's liability for discrimination in employment on the grounds that they do not describe the proper method of proof or the proper allocation of the burden of proof. She argues the instructions are in error because they are not based on the principles advanced by the United States Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[7]

We do not reach the merits of Hout's arguments. The issue is not properly before this court because Hout failed to submit to the trial court instructions that were patterned after the *McDonnell Douglas* decision and did not object to the court's proposed instructions on this ground. She objected generally to the instructions, saying they placed on her a heavy burden, but she did not distinctly state the grounds of her objection or suggest corrective language consistent with *McDonnell Douglas* principles.[8]

We have repeatedly held that we will not review the failure to give a jury instruction when the matter is not properly brought to the attention of the trial court. The complaining party must make an objection that is sufficient to put the court and opposing counsel on notice of the defect in the instruction given.[9] We find Hout's objection was insufficient and we expressly decline to make any decision regarding the application of *McDonnell Douglas* principles to instruction of the jury in employment discrimination cases brought under AS 18.80.220(a)(1).

■■ We recognize that a party is entitled to review of an instruction if the giving of the challenged instruction was plain error likely to result in a miscarriage of justice, even though proper objection was not made below. *Haskins v. Shelden,* 558 P.2d 487, 492 (Alaska 1976); *Holiday Inns of America, Inc. v. Peck,* 520 P.2d 87, 91–92 (Alaska 1974); *Reiten v. Hendricks,* 370 P.2d 166, 169 (Alaska 1962). We find no reason to apply the plain error rule in this case. After careful review of the record we find that it is unlikely that the incorporation of *McDonnell Douglas* principles would have altered the result.[10]

---

**7.** The principles advanced in *McDonnell Douglas* were further explained in *Texas Dep't. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Board of Trustees v. Sweeney,* 439 U.S. 24, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978); *Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978).

**8.** The application of *McDonnell Douglas* principles is argued by Hout's appellate counsel. Hout's trial counsel relied on other theories and summarized his objections to the instructions in his final argument to the court regarding the jury instructions:

[Counsel]: Your Honor, this—if I might just say that I think on the basis of—of these jury instructions, and I don't—I don't say this in any disrespect to the Court, I seriously do not believe that with these jury instructions, it would be possible to find liability to lead off Hitler's discrimination against the Jews.

The Court: Well, for a comment that was . . . meant to be non-disrespectful, [Counsel], you didn't exactly accomplish your goal.

**9.** Alaska R.Civ.P. 51(a) provides in part:

No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to con-

sider its verdict, stating distinctly the matter to which he objects and the grounds of his objection.

In *Saxton v. Harris,* 395 P.2d 71, 73 (Alaska 1964) (footnote omitted), we observed:

The purpose of this rule is to enable the trial judge to avoid error by affording him an opportunity to correct his charge before it goes to the jury. The dicates of the rule are satisfied only if the judge is clearly made aware of the alleged error in or omission from the instructions. Counsel's objections must be specific enough to clearly bring into focus the precise nature of the asserted error.

See *Alyeska Pipeline Serv. v. Aurora Air Serv.,* 604 P.2d 1090, 1094–95 (Alaska 1979); *Brown v. Estate of Jonz,* 591 P.2d 532, 533 (Alaska 1979); *City of Nome v. Ailak,* 570 P.2d 162, 171 (Alaska 1977); *Mitchell v. Knight,* 394 P.2d 892, 896–97 (Alaska 1964).

**10.** We do not believe it would be instructive to recite the instructions given. We note, however, that the instructions did not set forth an erroneous standard of liability. See *City of Nome v. Ailak,* 570 P.2d 162, 169–70 (Alaska 1977) (indicating that jury instructions which set forth an erroneous standard of liability normally would be considered to be plain error,

Hout asserts that the instructions were prejudicially erroneous for numerous other reasons. In light of the evidence presented and considering the instructions as a whole, we do not perceive that the language cited by Hout misled the jury to her prejudice. The error, if any, was harmless. *See Martinez v. Bullock*, 535 P.2d 1200, 1205–07 (Alaska 1975); *Mitchell v. Knight*, 394 P.2d 892, 896 (Alaska 1964).

### III. Evidentiary Rulings

■ Hout argues the trial court erred in excluding, on three occasions, her testimony that Smith told her, in effect, "[T]he Brinkerhoff toolpushers don't want you on the rig." On each occasion the trial court sustained Brinkerhoff's objection and excluded the testimony on the basis that it is hearsay. Hout argued at trial and asserts on appeal that the testimony falls under the state of mind exception to the hearsay rule and is admissible to show the toolpushers', as well as Smith's, animus and inferentially their subsequent conduct. Alaska R.Evid. 803(3).[11] She asserts that evidence presented at trial showed that by "subtle influence" the toolpushers could have accomplished her dismissal and the testimony should therefore have been admitted as circumstantial proof of the toolpushers' conduct.

We agree that the evidence was admissible to show Smith's state of mind under Alaska Rules of Evidence 803(3), but we do not agree that the evidence was admissible to show the state of mind or the subsequent conduct of the Brinkerhoff toolpushers. In the Commentary to the Alaska Rules of Evidence we said:

> For the statements of one person as to his mental or emotional condition to be used against another, Subdivision (23) must be satisfied. This modifies the [*Mutual Life Insurance Co. v.*] *Hillmon*, [145 U.S. 285, 12 S.Ct. 909, 36 L.Ed. 706 (1892)] rule.

Commentary to Alaska R.Evid. 803(3). There is no evidence in the record that Alaska Rule of Evidence 803(23) was satisfied.[12]

Though the testimony was admissible against NANA, the trial court's error in excluding the testimony was harmless. Hout was permitted to testify as to conversations with Smith which contained substantially the same statement. The ruling, therefore, is not a ground for reversal. *Drickersen v. Drickersen*, 604 P.2d 1082, 1086 (Alaska 1979); Alaska R.Civ.P. 61.

Hout also challenges the trial court's exclusion of various other evidence on the

---

when the result of the case might have been altered by the improper instruction). They merely did not address the intermediate evidentiary burdens discussed in *McDonnell Douglas* and its progeny. *See* note 7 *supra*.

**11.** Alaska R.Evid. 803 provides in part:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
. . . .
(3) ... A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health) offered to prove his present condition or future action, but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

Hout raised other exceptions at trial that she does not pursue on appeal. Our discussion, therefore, is limited to the state of mind exception to the hearsay rule.

**12.** Alaska R.Evid. 803(23) provides the following exception to the hearsay rule:

A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, [is admissible] if the court determines that (a) the statement is offered as evidence of a material fact; (b) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (c) the general purposes of these rules and the interest of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.

Hout did not give opposing counsel notice of her intent to use the excluded testimony.

basis that it was remote, cumulative, or collateral. We have reviewed the court's rulings and find no clear abuse of discretion. *See Babinec v. State,* 586 P.2d 966, 968 (Alaska 1978); Alaska R.Evid. 403.

### IV. Directed Verdict in Favor of Brinkerhoff

Hout's final argument is that because of the erroneous exclusion of evidence the directed verdict against Brinkerhoff was based on an incomplete record and must be reversed. Our determination that the trial court did not err in excluding Smith's statement as hearsay against Brinkerhoff eliminates the primary basis for Hout's argument. Even if Smith's testimony were admissible against Brinkerhoff, we find the evidence, when viewed in the light most favorable to Hout, is insufficient to implicate Brinkerhoff in Hout's dismissal.[13] The trial court, therefore, did not err in granting Brinkerhoff's motion for directed verdict.

AFFIRMED.

BURKE, Justice, concurring.

I concur.

I have serious reservations about the majority's conclusion that the trial court erred in refusing to permit Hout to testify concerning Smith's statements to her. I do concur, however, in the majority's further conclusion that such error, if any, was harmless.

G. R., Appellant,

v.

---

**13.** A directed verdict is appropriate when the evidence is such that reasonable persons could not differ in their judgment. *Holiday Inns of* *America, Inc. v. Peck,* 520 P.2d 87, 92 (Alaska 1974).