Bobbie Dee LENGELE, Appellant,

v.

STATE of Alaska, Appellee.

No. A–10679.

Court of Appeals of Alaska.

Feb. 8, 2013.

Michael T. Schwaiger, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant.

Gary L. Poorman and Charles D. Agerter, Assistant Attorneys General, Office of Special Prosecutions and Appeals, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

### OPINION

BOLGER, Judge.

In this appeal, Bobbie Dee Lengele argues that a jury instruction improperly suggested that she could have no "lawful excuse" for her failure to pay child support if she had ever voluntarily terminated her employment. We agree that this instruction was an incomplete and potentially misleading statement of Alaska law. But we conclude that Lengele failed to tell the trial judge the specific grounds for her objection to this instruction, and that her general objection was inadequate to preserve this issue for appeal. And when we review the evidence submitted at trial, the other jury instructions, and the closing arguments, we conclude that the language of this instruction was not plain error.

### Background

Lengele and her husband, Rodney, married in 1986. They had two children, Rodney Jr. and Brianna. At the time of Lengele's criminal trial, Rodney Jr. was twenty-two years old and Brianna was thirteen years old.

Prior to the marriage, Lengele worked at a burger restaurant and at Village Inn as a waitress. Lengele trained to be a hair stylist, bartender, travel agent, and pipeline technician. During Lengele's marriage, she worked as a bartender, a retail clerk, and a pipeline security guard. As a security guard, she earned approximately $60,000 per year. Lengele left her job as a security guard and moved to Valdez to train for a pipeline technician job with Alyeska Pipeline Service Company, but she never completed the training for the technician position.

Lengele and her husband separated in February 1999 and divorced in December 1999. Lengele was unemployed at the time of the divorce. During the custody proceedings, the court determined that Lengele and her husband would have joint legal custody. Her husband would have physical custody of the children seventy percent of the time, and Lengele would have physical custody thirty percent of the time. The court ordered Lengele to pay $906.33 per month for child support. The child support order was retroactive to the date of Lengele's separation from her husband, so she owed $10,875.96 when the order was entered.

According to Lengele's later testimony, she did not know about the child support court date, and she learned about her child

support obligation from her ex-husband. Lengele attempted to obtain a modification of her child support obligation on several occasions, but she was unsuccessful. Her requests for modification were denied because she failed to submit all the necessary paperwork. Lengele hired an attorney to help her with her request, but the attorney eventually withdrew from Lengele's case because he was unable to reach her.

Lengele also testified that, following the divorce, she attempted to apply for new jobs. She completed two training classes for a pipeline security job, but she did not get the job because she did not have a driver's license. She also started training for an oil rig job, but some of the company's oil rigs burned down and left her without a job. She tried to obtain work with Alaska Fish and Game and the Alaska Railroad, but she was unsuccessful. She worked for a time as a bartender, but her pay did not cover her transportation costs.

Lengele worked at Carrs–Safeway for a short time in 2003, and a portion of her wages was garnished by the Child Support Services Division ("CSSD"). The first garnishment was $124.42, and the second garnishment was $85.51. At trial, the prosecutor cross-examined Lengele about a conversation she had with an investigator. The prosecutor asked Lengele whether she told the investigator, "[Carrs–Safeway] gave me part time [work] ... and I didn't have any way to get down there; it was just too much hardship trying to get down there, ... and then once [the] child support hit me, it really wasn't worth it." Lengele responded that she believed the statement was taken out of context. Lengele also testified that she worked at Fred Meyer after terminating her employment at Carrs–Safeway. CSSD was not able to garnish her wages at Fred Meyer because she quit that job after only a few weeks.

Lengele testified that she attempted to find other employment by attending job fairs. She also began to take care of her disabled mother in exchange for room, board, and some expenses for her children, but she was unable to obtain funding from the state or her native corporation for the time she spent caring for her mother.

There was testimony that Lengele periodically provided her children with some clothes, food, and school supplies. CSSD also garnished several of her Permanent Fund dividends. But Lengele failed to make any additional child support payments. As of May 2006, Lengele owed $80,884.02 in arrears; by February 2, 2009, she owed $112,314.24.

On February 19, 2009, Lengele was indicted on one count of criminal nonsupport.[1] At trial, Lengele argued that she lacked the actual ability to pay her child support obligation despite the exercise of reasonable efforts. Lengele's defense was that she was unable to pay her child support obligation because she was unable to obtain a driver's license, she had medical problems that stemmed from obesity and high blood pressure, she needed to care for her disabled mother, she was unable to find a job that could pay her enough to cover her child support obligation, and she was unable to obtain a modification of her child support.

Prior to closing arguments, the court discussed the jury instructions with the parties. The parties submitted substantially identical instructions on the elements of the crime of criminal nonsupport. The instructions provided that the State was required to show that Lengele's failure to provide support was "without lawful excuse—in other words, that she either actually had the financial ability to provide support or that she could have had such actual ability through the exercise of reasonable efforts."

The State also submitted a more detailed instruction on the meaning of "without lawful excuse":

> Under the criminal nonsupport statute, in order for the defendant to have a lawful excuse the conditions giving rise to his/her failure to provide support must not have been of his/her own making. Nor can he/she pursue a course of conduct or act in a manner which materially contributes to

1. AS 11.51.120(d).

the frustration of his/her duty to support his/her children. Self-induced poverty is not a lawful excuse.

It is not a lawful excuse to the crime charged when, though employable, the defendant voluntarily terminates his/her employment, voluntarily reduces his/her earning capacity or fails to diligently seek employment. In this respect you may take into account the defendant's ability and skills acquired in his/her working life and the extent to which he [or she] has, when not employed, taken steps to find employment within his/her community.

Furthermore, you must not consider the defendant's obligation to support a second family or children incurred after the [court's] order in this case as a legal lawful excuse for failure to support the child involved in this case. A [person's] first obligation is to his/her first children, and a voluntary assumption of a new obligation by marrying a second time does not excuse him [or her] from a prior obligation imposed by the court.

Lengele objected to the second and third paragraphs of the foregoing proposal. Lengele noted that the first paragraph of the State's proposed instruction followed Alaska law, but the "other two paragraphs [were] not based on Alaska law" and "appear[ed] to be based on Oklahoma law and Illinois law." Lengele argued, "I would ask to limit [the instruction] only to Alaska law, which is the law that the jurors have to decide under ... and that's *Johansen* [the leading Alaska Supreme Court case on criminal nonsupport]."[2]

The trial judge decided to keep the second paragraph because it comported with *Taylor* (a more recent court of appeals case on criminal nonsupport),[3] but agreed to remove the third paragraph of the State's proposed jury instruction.

Lengele's attorney agreed that "self-induced poverty is not a lawful excuse" under Alaska law. However, he argued that the statement about self-induced poverty in the

first paragraph was sufficient to explain the law, and the second paragraph was "surplusage" and "not necessary." The judge overruled Lengele's objection and stated that he would remove the third paragraph of the State's instruction but would keep the second paragraph. The judge used the first and second paragraphs of the State's proposed instruction in Instruction No. 12 of the court's final instructions to the jury.

The jury convicted Lengele of criminal nonsupport, and she now appeals.

### Discussion

A person who has been legally charged with an obligation of child support commits the crime of criminal nonsupport if they knowingly fail "without lawful excuse" to provide support for the child.[4] In this statute, the term "without lawful excuse" means (1) "having the financial ability to provide support" or (2) "having the capacity to acquire that ability through the exercise of reasonable efforts."[5] The dispute in this case involves the meaning of this latter clause.

*Lengele did not preserve the issue she raises in this appeal.*

■ Lengele argues that the trial court incorrectly instructed the jury that "[i]t is not a lawful excuse to the crime charged when, though employable, the defendant voluntarily terminates his/her employment, voluntarily reduces his/her earning capacity or fails to diligently seek employment." As noted above, at trial, her counsel objected to this language solely on the ground that it "was not based on Alaska law." We conclude that this objection was not specific enough to alert the trial judge to the precise nature of the error the defendant now argues on appeal— that the instruction improperly excluded instances where Lengele may have voluntarily but reasonably quit her employment.

Alaska Criminal Rule 30(a) provides in part: "No party may assign as error any portion of the charge or omission therefrom unless the party objects thereto before the

---

**2.** *Johansen v. State,* 491 P.2d 759 (Alaska 1971).

**3.** *Taylor v. State,* 710 P.2d 1019 (Alaska App. 1985).

**4.** AS 11.51.120(a).

**5.** AS 11.51.120(f)(3).

jury retires to consider its verdict, stating distinctly the matter to which the party objects and the grounds of the objections." To determine whether a party's objection to a jury instruction is sufficient to preserve an argument for appeal, we apply a test borrowed from the cases construing the similar provisions of Civil Rule 51(a):

> The dictates of the rule are satisfied only if the judge is clearly made aware of the alleged error in or omission from the instructions. Counsel's objections must be specific enough to clearly bring into focus the precise nature of the asserted error.[6]

The Alaska Supreme Court has applied this test on numerous occasions.[7]

For example, in *Hout v. NANA Commercial Catering*, a plaintiff challenged the jury instructions relating to the defendant's liability for discrimination in employment on the ground that they did not describe the proper allocation of the burden of proof as required by federal precedent.[8] But the Alaska Supreme Court declined to reach the merits of the plaintiff's challenge. The court noted that the plaintiff only objected generally to the instructions, saying they placed on her a heavy burden, but she did not distinctly state the grounds of her objection or suggest corrective language.[9] The court held that a party who objects to a jury instruction must make an objection that is sufficient to put the court and opposing counsel on notice of the defect in the instruction given; a general objection is insufficient.[10]

We likewise conclude that Lengele's objection was insufficient to preserve the argument she is asserting in this appeal. In the trial court Lengele merely asserted that the disputed language was "not an accurate statement of Alaska law." This general objection was insufficient to put the trial judge and opposing counsel on notice of the precise nature of the issue that she now raises—that the disputed language improperly excluded instances where the defendant may have reasonably terminated her employment.

*The disputed instruction was an incomplete and potentially misleading statement of Alaska law.*

■ We must still determine whether it is accurate under the criminal nonsupport statute to say that it is not a lawful excuse "when, though employable, the defendant voluntarily terminates his/her employment, voluntarily reduces his/her earning capacity or fails to diligently seek employment." Lengele argues that this language could suggest to the jury that, if Lengele was employed, then she was guilty of nonsupport if she terminated her employment voluntarily, even if there was a good reason for her decision. This suggestion would potentially conflict with the statutory definition of "lawful excuse" and the case law that led to this definition.

Alaska courts presume that the legislature is aware of the common law when enacting statutes.[11] Common law decisions are "an especially important tool when 'a statute attempts to restate the common law.'"[12] When a judicial decision has "settled the meaning of an existing statutory provision, repetition of the same language in a new statute indicates, as a general matter, the intent to

---

6. *Heaps v. State*, 30 P.3d 109, 114 (Alaska App. 2001) (quoting *In re Estate of McCoy*, 844 P.2d 1131, 1134 (Alaska 1993)).

7. *See Jaso v. McCarthy*, 923 P.2d 795, 799–800 (Alaska 1996); *State v. Dupere*, 709 P.2d 493, 498 n. 5 (Alaska 1985); *Hout v. NANA Commercial Catering*, 638 P.2d 186, 189 n. 9 (Alaska 1981); *Drickersen v. Drickersen*, 604 P.2d 1082, 1085 (Alaska 1979); *Alaska Int'l Industries, Inc. v. Musarra*, 602 P.2d 1240, 1243 n. 1 (Alaska 1979); *Brown v. Estate of Jonz*, 591 P.2d 532, 534 (Alaska 1979); *City of Nome v. Ailak*, 570 P.2d 162, 171 n. 23 (Alaska 1977); *McLinn v. Kodiak Elec. Ass'n, Inc.*, 546 P.2d 1305, 1311 n. 15 (Alaska 1976); *Saxton v. Harris*, 395 P.2d 71, 73 (Alaska 1964); *see also Novick v. Gouldsberry*, 12 Alaska 267, 276, 173 F.2d 496 (9th Cir.1949) (quoting *Palmer v. Hoffman*, 318 U.S. 109, 119, 63 S.Ct. 477, 87 L.Ed. 645 (1943)).

8. 638 P.2d at 189.

9. *Id.*

10. *Id.*

11. *Young v. Embley*, 143 P.3d 936, 945 (Alaska 2006).

12. *Id.* (quoting 2B Norman A. Singer, *Sutherland Statutory Construction* § 50:02, at 146 (6th ed. 2000)).

incorporate its . . . judicial interpretations as well." [13]

The language and legislative history of the criminal nonsupport statute and the definition of "without lawful excuse" indicate that the legislature intended for the definition of "without lawful excuse" to be consistent with judicial constructions of the statute. The commentary to the 1978 revised criminal code cited *Johansen v. State*,[14] and expressly stated that "a defendant may not be convicted under the statute for failure to provide support to his minor child if he is in fact financially unable to provide support and his poverty is not self-induced." [15]   In 2004, the legislature used our language from *Taylor v. State*[16] when adopting a definition for "without lawful excuse." [17]   The legislative history further indicates that the legislature intended to incorporate the holding of *Taylor* when adopting this definition.[18]

This legislative history indicates that the legislature intended for the statute to be consistent with the holdings of *Taylor* and *Johansen.* There is no indication in the legislative history that the legislature intended to adopt an interpretation of "without lawful excuse" that differed from these interpretations of Alaska case law.

In *Johansen,* the Alaska Supreme Court had indicated that the jury should look at the circumstances surrounding a defendant's failure to pay child support to determine whether the defendant had a legitimate and reasonable excuse for failing to comply with the child support order.[19]   Johansen was employed as a fisherman, but made only minimal amounts of money over the course of several years because of poor fishing conditions.[20]   The court held that Johansen could be required to seek other work—to make "a reasonable effort to employ his earning capacity in directions other than the one he has chosen as his chief means of livelihood." [21]

The court's holding imposed an obligation on Johansen to seek out alternative employment.  If successful, Johansen's efforts could have required that he voluntarily terminate his employment as a fisherman.  It would have been illogical for the court to require Johansen to seek out better paying employment that would enable him to make his child support payments while also penalizing him for voluntarily terminating his former employment to do so.

In *Taylor,* we relied on this discussion from Johansen when we interpreted "without lawful excuse" to mean that "the accused either actually had funds available for payment of support or that he could have obtained such funds through reasonable efforts." [22]

With this background in mind, it appears that Instruction No. 12 in Lengele's case was incomplete.  If a defendant voluntarily terminates their employment, but introduces evidence that the voluntary termination was to avoid excessive job expenses or to seek more gainful employment, the State would still have the burden of showing that the failure to pay support was "without lawful excuse." This jury instruction was therefore potentially misleading.

*The disputed language does not constitute plain error.*

---

**13.**   *Bragdon v. Abbott,* 524 U.S. 624, 645, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998).

**14.**   491 P.2d 759 (Alaska 1971).

**15.**   Commentary on the Alaska Revised Criminal Code, Senate Journal Supp. No. 47 at 65, 1978 Senate Journal 1399.

**16.**   710 P.2d 1019 (Alaska App.1985).

**17.**   Attachment to Memorandum from Vanessa Tondini, Committee Aide, House Judiciary Committee, to Jean Mischel, Legislative Legal (Feb. 25, 2004) (included in the bill file for H.B. 514, 23d Leg., 2d Sess. (2004)).

**18.**   Minutes of the House Judiciary Committee, House Bill 514, Tape 04–28, Side B (0902 to 0636) (Feb. 27, 2004); Attachment to Memorandum from Vanessa Tondini, Committee Aide, House Judiciary Committee, to Jean Mischel, Legislative Legal (Feb. 25, 2004) (included in the bill file for H.B. 514, 23d Leg., 2d Sess. (2004)).

**19.**   *Johansen,* 491 P.2d at 769.

**20.**   *Id.* at 768–69.

**21.**   *Id.* at 769.

**22.**   *Taylor,* 710 P.2d at 1021.

■■ Incorrect or misleading language in a jury instruction will constitute plain error when (1) the error is not the result of an intelligent waiver or a strategic decision not to object, (2) the error affects substantial rights, (3) the error is obvious, and (4) the error is prejudicial.[23] "An error that is not constitutional in nature will be prejudicial if the defendant proves that there is a reasonable probability that it affected the outcome of the proceeding."[24] In this case, the disputed language is not plain error because it was not obviously incorrect and it was not prejudicial.

■ This language was not obviously incorrect because an obligor's failure to seek or maintain employment may establish that he or she does not have a reasonable excuse for failure to pay child support. This idea is consistent with the discussion in *Johansen*, where the court stated that an obligor "will not be permitted to succeed on the defense of having a legitimate reason or excuse for not complying with an order of child support where he has not made a reasonable effort to employ his earning capacity in directions other than the one he has chosen as his chief means of livelihood."[25]

■ Moreover, the disputed language was not prejudicial when one takes into account the evidence submitted at trial, the other jury instructions, and the closing arguments. The evidence at trial did not clearly include any instances where Lengele's decision to quit working was objectively reasonable. She said she quit working at Alyeska Pipeline Service Company because she was stressed due to calls from her boyfriend and her ex-husband. She also implied that she quit working a supermarket job because it wasn't worth it after CSSD garnished her wages. Even if Lengele had convinced the jury that these were valid reasons to quit her employment, these two incidents are fairly insignificant in view of her ten-year period of non-payment of child support.

Other jury instructions clarified the State's burden to show that Lengele's failure to pay child support was unreasonable. Instruction 10 stated the statutory definition: "Without lawful excuse means that the defendant either had funds available for payment of support or could have obtained funds through reasonable efforts." Instruction 11 stated that, when determining whether the failure to pay support was without lawful excuse, the jury "may and should consider all the circumstances of the defendant shown to you by the evidence. In this regard, it is proper to consider the physical condition of the defendant, his/her education and mental ability, his/her skills, his/her employment and the employment available to him, whatever money and wages and assets may have been available to him and all other evidence which you believe indicates an ability on his/her part to have paid support."

In Instruction 12, the first paragraph of the instruction told the jury that "a lawful excuse" must not have been of the defendant's "own making" and that "[s]elf induced poverty is not a lawful excuse." This language is consistent with the language of *Johansen* and *Taylor*, indicating that "a defendant may not be convicted under the statute for failure to provide support to his minor child if he is in fact financially unable to provide support and his poverty is non-self-induced."[26] Read in context, the jury would likely conclude that the disputed language of the second paragraph of this instruction was merely an example or an explanation of this idea that "self-induced poverty is not a lawful excuse."

Finally, the closing arguments of the parties reinforced the idea that the State must prove that the defendant acted unreasonably. In his opening argument, the prosecutor confirmed that the State had to prove "that Ms. Lengele's failure to provide support was without lawful excuse, in other words, that she either actually had the financial ability to

**23.** *Khan v. State*, 278 P.3d 893, 900 (Alaska 2012).

**24.** *Adams v. State*, 261 P.3d 758, 773 (Alaska 2011).

**25.** *Johansen*, 491 P.2d at 769.

**26.** *Taylor*, 710 P.2d at 1021 (quoting Commentary on the Alaska Revised Criminal Code, Sen. J.Supp. No. 47 at 64–65, 1978 Sen. J. 1399) (citing *Johansen*, 491 P.2d at 759).

provide support or that she could have had such actual ability through . . . the exercise of reasonable efforts."

The prosecutor then emphasized the first paragraph of Instruction 12:

I want to talk to you a little bit about this other instruction here, and I've under-lined the second sentence. I want you to read the whole instruction, but I'm going to focus on the second sentence here. And that's—and the judge is going to tell you that nor can he or she pursue a course of conduct or act in a manner which material con—materially contributes to the frustra-tion of his or her duty to support his or her children. Self-induced poverty is not a lawful excuse.

Think about that a little bit. You can't just simply say it's not worth it. That, ladies and gentlemen, is self-induced pov-erty. Your children are worth it and I think as a society, you'd agree with me that you have to pay to support your chil-dren. You don't get to decide that you're only going to work a certain kind of job. And you don't get to decide that, well, I'm not going to work retail and I'm not going to bartend. And that's what you heard in this case.

In the defense attorney's argument, he contended that Lengele "has tried to make reasonable effort after reasonable effort after reasonable effort to actually gain the ability to pay her child support agreement." He pointed out that the fourth element of this charge required the jury to determine

whether Bobbie could have had the actual ability to pay her child support obligation through the exercise of reasonable efforts. So you're going to first have to figure out did what she do was reasonable? Was it reasonable for her to find work, try to find work? Was it reasonable for her to try and get her child support obligation modi-fied? Was it reasonable for her to feel limited in her ability to do so based on her prior work experience, her training, and her current work experience? You also

are going to have to figure out whether, not regarding those reasonable efforts, what she did, even if she were successful, would have given her the actual ability to pay her child support obligation.

In the rebuttal argument, the prosecutor responded to the defense attorney's argu-ment. He stated:

Ladies and gentlemen, we know that she had the ability to provide financial support. She worked. She quit her job voluntarily. She self-induced her poverty. You don't get to only look for jobs that are high paying. If we did that, if that was the law, then children would hardly ever get sup-port. You don't get to pick your job in order to support your children. You've got to support your children whether you're working or not.

These closing arguments reinforced the concept that Lengele's decisions to voluntari-ly quit her employment should be judged in the context of whether she was exercising reasonable efforts to provide support or whether she was living in self-induced pover-ty. In view of these arguments, we doubt that the jury would have believed that Len-gele could never quit a job even if it was economically advantageous to do so. We conclude that the disputed language in In-struction 12 was not plain error.

### Conclusion

The disputed jury instruction in this case included an incomplete and potentially mis-leading statement of Alaska law. But when we review the evidence submitted at trial, the other jury instructions, and the closing arguments, we conclude that this instruction was not plain error. We therefore AFFIRM the superior court's judgment.

