NOTICE

*The text of this opinion can be corrected before the opinion is published in the Pacific Reporter. Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections @ appellate.courts.state.ak.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

ROBERT ROY ROTH JR.,

                  Appellant,

       v.

STATE OF ALASKA,

                  Appellee.

Court of Appeals No. A-11088
Trial Court No. 3AN-10-13124 CR

O P I N I O N

No. 2417 — June 27, 2014

Appeal from the Superior Court, Third Judicial District, Anchorage, Gregory Miller, Judge.

Appearances: Jane B. Martinez, Anchorage, under contract with the Public Defender Agency, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant. Ann B. Black, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, Allard, Judge, and Hanley, District Court Judge.[*]

Judge MANNHEIMER.

---

[*] Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

Robert Roy Roth Jr. appeals his convictions on two counts of first-degree child endangerment under subsection (a)(2)(A) of AS 11.51.100. This statute makes it a crime for the parent or guardian of a child under the age of 16 to "leave" their child with another person if the parent or guardian knows that this person is under a duty to register as a sex offender.

This appeal ultimately arises from the fact that Roth and the State disagree about what it means to "leave" a child with another person.

*Roth's mistaken characterization of this litigation*

In his brief to this Court, Roth argues that the evidence presented at his trial was legally insufficient to support his conviction, and therefore the charges against him should be dismissed with no possibility of re-trial. But the evidence at Roth's trial would only be insufficient if this Court adopted Roth's interpretation of the statute — in particular, Roth's interpretation of the element of "leaving" a child with a known sex offender.

This question of statutory interpretation arose because the evidence at Roth's trial showed that Roth left his children with a man he knew to be a sex offender while Roth went to the store, but the evidence also showed that two other adults were present in another part of the residence (the back bedroom).

At Roth's trial, the prosecutor argued to the jury that if Roth entrusted his children to the sex offender, he was guilty of violating the child endangerment statute even if other adults were present in the residence. But the defense attorney argued to the jury that the statute required proof that Roth left his children *solely* with the sex offender — and that the presence of the other two adults in the house meant that, as a matter of law, the jury should find Roth not guilty.

The jurors were never told which of these interpretations of the statute was correct. Even when the jurors (during deliberations) asked the court to clarify the meaning of the statute, the trial judge told the jurors that they would have to interpret the statute for themselves.

Given these circumstances, Roth's argument on appeal is not an "insufficiency of the evidence" argument. Rather, it is an argument that Roth should receive a new trial because the jurors were not told the proper definition of the elements of the crime. We discussed this point of law at some length in *Collins v. State*, 977 P.2d 741, 751-52 (Alaska App. 1999) (concurring opinion of Judge Mannheimer, which was adopted by the Court, *id.* at 748).

*Why we conclude that Roth is not entitled to litigate the proper meaning of the statute*

Because the issue here is one of statutory interpretation, this Court's next step would normally be to examine the disputed statute, its legislative history, the policies underlying the statute, and any relevant case law from other jurisdictions, and then reach a decision regarding the proper interpretation of the statute. But Roth's case is different.

As we noted earlier, the jury received no instruction on the meaning of "leaving" a child with a known sex offender. Instead, the jury heard only the competing arguments of the two attorneys concerning the proper interpretation of this element of the crime. And given the evidence presented at trial, the jurors would almost inevitably convict Roth if they followed the prosecutor's interpretation of the statute, but the jurors would almost certainly acquit Roth if they followed the defense attorney's interpretation.

Predictably, after about two hours of deliberations, the jury sent a note to the trial judge asking for clarification of this point of law. Specifically, the jurors asked the judge to tell them whether the child endangerment statute is violated whenever a parent entrusts a child to a known sex offender, even though another adult is present — or whether, instead, the government must prove that the sex offender was the sole adult present.

When the trial judge summoned the parties to discuss the jury's note, the two attorneys restated their competing interpretations of the statute. The prosecutor reiterated the State's position that the gist of the offense is the parent's decision to entrust a child to the care of a known sex offender — and that, if the jury found that Roth entrusted his children to a known sex offender, the fact that there were two other adults in the back bedroom at that time was no defense. The defense attorney, for his part, reiterated his position that the statute applies only to situations where a parent entrusts a child to one sole individual. In particular, the defense attorney told the trial judge that if the jury had a reasonable doubt "[as to whether] Mr. Roth left his child[ren] in the sole care of [the sex offender], then their decision should be 'not guilty'."

The trial judge frankly acknowledged that he could not decide which of these differing interpretations was correct. The judge then proposed the solution of letting the jurors interpret the law for themselves:

> The Court: I would propose answering the [jury's] question as follows: ... "The Court cannot interpret the statute for the jury. The jury must interpret the law as it is written, and apply the evidence to that interpretation as the jury thinks appropriate."

Both attorneys stated their agreement with the trial judge's approach. In particular, Roth's defense attorney told the judge, "I do agree that the Court cannot interpret the law for the jury[.]"

The prosecutor then suggested that the jurors should be instructed to use their "common understanding of words" when they interpreted the statute. Responding to the prosecutor's suggestion, the trial judge reworded his proposed response to the jury's question:

> *The Court*:  How about the following:  "The Court cannot interpret the statute for the jury.  Where particular words or phrases are not defined, the jury should use reason and common sense." ?

Roth's attorney responded, "Your Honor, I'd say that we could — I think that [what you just proposed] sounds appropriate."

After a little more discussion about the precise wording of the response to the jurors, the trial judge announced the final version of his response:

> *The Court*:  Let me read [my draft response] from the beginning:  "The Court cannot interpret the statute for the jury.  Where particular words or phrases are not defined elsewhere in the instructions, the jury should use reason and common sense.  You should take all of the instructions as a whole.  [And] Instruction No. 8 [that you already received] contains all applicable portions of the statute."
>
> I see you both nodding your head?
>
> *Defense Attorney*:  Yes, Your Honor.  I think that that's a fair statement of the law.

The defense attorney then tried to hedge his bet:

*Defense Attorney*:  Out of an abundance of caution, could I say that, if I'm wrong, I'd just like to make a point for appeal in [the event that] this case would have to go up to the Court of Appeals — because we are treading new ground here without much guidance from the Court of Appeals or [the] statutes.

*The Court*:  So noted.

The trial judge then gave this written response to the jurors.  Thirty minutes later, the jury returned its verdicts — finding Roth guilty.

### (a)  The judge's response to the jury was plainly erroneous

The judge's response to the jury's question was obvious error — because trial judges are under a duty to instruct the jurors on all matters of law that they need to make their decision.  This principle is codified in Alaska Criminal Rule 30(b):  "The court shall instruct the jury on all matters of law which it considers necessary for the jury's information in giving their verdict."

 Here, the jury needed to know whether to follow the prosecutor's suggested interpretation of the statute, or the defense attorney's competing interpretation of the statute, or some other interpretation.

We acknowledge that the task confronting the trial judge was a difficult one:  the language of the statute does not directly resolve the question of statutory interpretation that the parties were debating, and the trial judge had little time to research this issue.  But the judge remained under a duty to give the jury an answer — a duty to make his best effort to ascertain the proper definition of the elements of the crime, and then to tell the jury this definition.  It was error for the judge to tell the jurors that they

would have to interpret the statute on their own — that they would simply have to do their best, using reason and common sense, to sort out the legal dispute between the prosecutor and the defense attorney.

> ### (b)  But Roth's attorney clearly made a tactical choice when he encouraged the judge to give that improper response

When a litigant wishes to raise a point on appeal as a claim of plain error, one thing the litigant must show is that they (or their attorney) did not make a tactical decision to refrain from objecting to the trial court's action or ruling.  *Adams v. State*, 261 P.3d 758, 773 (Alaska 2011).

The record in this case shows that Roth's attorney did not simply fail to object to the judge's error (telling the jurors that they would have to interpret the statute for themselves).  Rather, Roth's attorney actively encouraged the trial judge to commit that error.

Moreover, the record reveals a clear tactical reason why Roth's attorney would encourage the judge not to give the jurors any further instruction on this issue of statutory interpretation.

As we have explained, the prosecutor and the defense attorney argued competing interpretations of the offense during their summations to the jury.  Given the evidence presented at Roth's trial, the jurors would almost certainly acquit Roth if they followed the defense attorney's interpretation of the statute.  On the other hand, the jurors would almost certainly convict Roth if they followed the prosecutor's interpretation of the statute.

In their question to the trial judge, the jurors explicitly asked the judge to tell them which of these interpretations was correct.

If Roth's attorney pressed the trial judge for a definitive ruling on this point of law, he ran the risk that the judge would ultimately decide that the *prosecutor's* view of the statute was correct — which, in practical terms, meant that Roth would be convicted. But if the judge declined to issue a ruling on the meaning of the statute, then the jurors would be free to adopt the defense attorney's interpretation if they found it convincing. Alternatively, there was a chance that if the jurors were unable to reach consensus about the meaning of the statute, they might conclude that this, by itself, constituted a reasonable doubt as to whether the State had proved Roth's guilt.

Under these circumstances, there were obvious tactical advantages in the course adopted by the defense attorney — obvious benefits to be gained by encouraging the judge to tell the jurors that the court was unable to give them any further instruction on the elements of the crime, and that they would just have to interpret the statute for themselves.

We accordingly hold that Roth is not entitled to pursue his jury instruction argument as a claim of plain error.

We acknowledge that, right after the trial judge told the attorneys that he intended to respond to the jury's question in the manner that the defense attorney approved of, the defense attorney tried to hedge his bet — by declaring "out of an abundance of caution" that if he was wrong about how the trial judge should respond to the jury's question, "[he'd] just like to make [this] a point for appeal in [the event that] this case would have to go up to the Court of Appeals". The trial judge responded, "So noted."

But neither the defense attorney's statement nor the trial judge's response is sufficient to save Roth from the consequences of the procedural default that occurred in this case. This Court will not allow an attorney to actively encourage a trial judge to

issue a particular ruling and, at the same time, preserve the right to challenge the judge's ruling on appeal simply by mentioning the possibility that the ruling might be wrong.

As this Court explained in *Lengele v. State*, 295 P.3d 931, 934-35 (Alaska App. 2013), even in cases where an attorney expressly *disagrees* with a trial court's ruling on jury instructions, the attorney must do more than simply indicate their disagreement if the attorney wishes to preserve a claim for appeal. The attorney's objection must be specific enough to alert the trial judge to the nature of the alleged error in (or omission from) the jury instructions. [1]

This rule applies even more forcefully to the circumstances of Roth's case: here, the defense attorney, far from disagreeing with the trial judge's refusal to give the jury any further instruction on the elements of the crime, actually encouraged the judge to take that stance.

Nor is the situation changed by the trial judge's response, "So noted." A trial judge has no authority to exempt a litigant from the rules governing the preservation of points on appeal. *See Williams v. State*, 214 P.3d 391, 393 (Alaska App. 2009).

### (c) Roth's remaining constitutional claims

A large portion of Roth's brief is devoted to several constitutional attacks on the child endangerment statute. Roth claims that if the child endangerment statute is not interpreted as he argues it should be, then the statute violates various constitutional guarantees.

---

[1] *Lengele*, 295 P.3d at 935. *See also In re Estate of McCoy*, 844 P.2d 1131, 1134 (Alaska 1993); *Pierce v. State*, 261 P.3d 428, 432-33 (Alaska App. 2011); *Heaps v. State*, 30 P.3d 109, 114 (Alaska App. 2001).

None of these constitutional claims was raised in the trial court. Nor do any of these claims rise to the level of plain error under the facts of Roth's case.

*Conclusion*

The judgement of the superior court is AFFIRMED.